Lee Leddrew SNIDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68156.

Court of Criminal Appeals of Texas, En Banc.

Dec. 5, 1984.

Russell D. Daves, Lubbock, for appellant.

John T. Montford, Dist. Atty., and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury found appellant guilty of theft, found the enhancement allegation to be true, and assessed punishment at confinement for twenty years and a fine of five thousand dollars.

Appellant raises two grounds of error. The first alleges that, because it was outside the scope of the State's search warrant

and was the fruit of an illegal search and seizure, certain evidence was admitted erroneously. The second alleges that the evidence is insufficient to establish the identity of the property seized or the fair market value of the stolen property.

Appellant does not contest the validity of the search warrant used in the instant case. Rather, he says "The issue in this ground of error rests on the extent to which evidence seized during a search conducted under an admittedly valid search warrant is admissible, if it is not described in the warrant."

At a hearing on appellant's motion to suppress evidence, Detective Earl Rankin of the Lubbock Police Department testified that on May 7, 1979, he had obtained a warrant to search a residence, automobiles, and outbuildings located at 6213 23rd street in Lubbock, and persons occupying them. The warrant listed certain Citizen's Band radio (CB) equipment that had been taken in a burglary.

Rankin said that on arriving at the premises he saw a Speedaire air compressor sitting in the front yard. Because of the homemade grille and basket attached to the air compressor, Rankin recognized it as the one taken in a burglary at the Resthaven Funeral Home and Memorial Park in February, 1979. The compressor was sitting in the front yard and was visible even from the street.

Rankin knew about the Resthaven burglary and was familiar with the items that had been taken because he had done the follow-up investigation of that offense. Rankin had spoken with Sam McWhorter, an employee of the Funeral Home, and McWhorter had described the homemade guard and basket.

The search of a shed located on appellant's premises also turned up several other items that Rankin recognized as items taken in the Resthaven burglary, including a Gillette AC generator. A dune buggy that another officer recognized as an item stolen in a yet another theft was also seized in the search of the shed. No CB equipment was found.

Rankin testified that, based on the information he knew about the Resthaven burglary—information he had known before he searched appellant's premises, he recognized the compressor as the one taken in that burglary. He had also known that a Gillette AC generator had been taken, and he saw a Gillette AC generator in the shed, along with several other items he recognized as having been stolen from Resthaven—including a weed-eater marked "Resthaven Funeral Home." The source of the items was confirmed by matching the serial and model numbers and descriptions on the offense reports from the Resthaven burglary and from other thefts and burglaries with the equipment found in the shed. Rankin also testified that the shed in which most of the stolen property was found was cluttered with all kinds of car parts, tools and junk. On cross examination, Rankin said that he had taken anything that had a serial number or a model number that he might be able to tie into a burglary.

Appellant contends that "all items included in State's pretrial exhibit number one are fruits of an illegal search and the admission into evidence of the Gillette AC generator, State's exhibit number three, constitutes reversible error." Appellant was indicted for theft of the compressor and the generator. Of the State's pretrial exhibits, only the compressor, the generator, the weed eater, and a chain hoist were identified at trial as property stolen from Resthaven and discovered on appellant's premises. It is to these items that we address our discussion of appellant's contention that these items were outside the scope of the search warrant and should have been suppressed.

■ Before the facts can be examined to determine whether a search exceeded the scope of the warrant we must determine whether the scope of the search is contested because of the *location* where the items were seized, or by the claim that the items seized were not described in the warrant or otherwise reasonably connected to the search. If the former contention is raised

the officers must show that they were properly in the place where the item was found. That can be done on the basis of the warrant, as in the instant case, or under the authority of one of the other exceptions to the warrant requirement. See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The latter contention was made in the instant case.

The items involved in the instant case, although they are not described in the warrant, need not be shown to have been related to the investigation for which the warrant issued because they were in plain view while the officers were legally upon the premises under authority of the warrant. Appellant does not contest the validity of that warrant.

██ In *Coolidge v. New Hampshire*, supra, the United States Supreme Court discussed the plain view exception to the warrant requirement and the three conditions that must be met to invoke that doctrine: The initial intrusion must be proper so that the police have a right to be where they are; the discovery of the evidence must be inadvertent; and it must be immediately apparent to the police that they have evidence before them. In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) the Supreme Court explained that what must be "immediately apparent" is probable cause, when they stated that the rule set forth in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) was applicable; " '[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' "

Our discussion ante makes it very clear that the police were validly upon the premises and that probable cause was immediately apparent. The very fact relied upon by appellant—that the items in the shed were found while the shed was being searched for *other* items, and that the instant evidence was not named in the warrant, demonstrates that their discovery was inadvertent.

██ Appellant contends that *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) control the instant case. Appellant also contends that a nexus need be shown between the criminal investigation undertaken, i.e., the search for CB equipment, and the items seized. Because the three requirements of plain view are met, no additional nexus to criminal activity need be shown. Plain view requirements are intended to supplant such a nexus. Further, as the Supreme Court noted in *Warden*, supra, nexus is a probable cause requirement which is met automatically when the evidence seized is the fruit or instrumentality of a crime. See *Warden*, 387 U.S. at 307, 87 S.Ct. at 1650.

Apparently appellant confuses the need for a nexus when *evidence* connected to a crime—so called "mere evidence"—rather than fruits, instrumentalities or contraband, is seized, as in *Warden*, supra, with the scope of a search when fruits, instrumentalities, or items of contraband are found in *plain view*, as in *Coolidge*, supra. The crux of the distinction is the "kind" of probable cause necessary in each instance.

██ A case involving plain view supplies the probable cause by meeting the "immediately apparent" requirement. *Texas v. Brown*, supra. That probable cause is similar to the nexus requirement spoken of in *Warden*, supra.

> The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for "mere evidence" or for fruits, instrumentalities or contraband. There must, of course, be a nexus—*automatically provided in the case of fruits, instrumentalities or contraband*—between the item to be seized and criminal behavior.

387 U.S. at 306–307, 87 S.Ct. at 1649–1650. (emphasis added)

██ Appellant also relies upon two Texas cases as authority for his contention

that a nexus need be shown. Both *Chambers v. State*, 508 S.W.2d 348 (Tex.Cr.App. 1974) and *Phenix v. State*, 488 S.W.2d 759 (Tex.Cr.App.1973) involved the seizure of evidence not described in the warrant present in each case. In both cases, this Court held that a nexus had in fact been shown between the evidence seized and the criminal activity which was the subject of the warrant. However, these cases did not involve the finding of fruits of offenses unrelated to the suspected offense which was the focus of the warrant. *Harris v. United States*, was overruled in *Chimel v. California*, supra. Appellant's reliance on *Harris* is misplaced. The ground of error is overruled.

■ In his next ground of error, appellant challenges the sufficiency of the evidence to show that the property seized from appellant's premises was stolen from Resthaven.

Sam McWhorter, the park superintendent for Resthaven Memorial Park, testified that in February, 1979 several items were stolen from Resthaven, including a Speedaire air compressor and a Gillette AC generator. McWhorter testified that the compressor had a homemade guard and basket that he had installed on it. He said that the generator had no unusual identifying feature, but that it was a Gillette generator. He said he recognized the generator as the one taken from Resthaven and had no reason to believe that it was not the same one. McWhorter also identified photographs of the items seized from appellant's premises as those items stolen from Resthaven.

Detective Earl Rankin testified about the items taken in the Resthaven burglary and said that he recognized the compressor and generator seized from appellant's premises as those taken in the Resthaven burglary. Rankin testified that the photographs admitted into evidence were pictures of the property he had seized from appellant's property. He also said that the compressor had an identifying model number and that the generator had an identifying serial number, although he did not state whether the numbers on the Resthaven equipment had been recorded.

The evidence is ample to establish that the identity of the property as that stolen from Resthaven. See and cf. *Bibbs v. State*, 658 S.W.2d 618 (Tex.Cr.App.1983); *Stoner v. State*, 585 S.W.2d 750 (Tex.Cr. App.1979).

Next, appellant contends that the State did not prove the fair market value of the stolen property. Appellant argues that the State was bound to prove the fair market value of each item individually and that, therefore, proof that the aggregate value was $400 was insufficient to prove value.

■ Appellant's reliance on *Pena v. State*, 422 S.W.2d 937 (Tex.Cr.App.1967) and *Pitcock v. State*, 367 S.W.2d 864 (Tex. Cr.App.1963) is misplaced. Those cases hold that where an indictment alleges theft of several items and alleges an aggregate value for those items, the State must prove that each of the items alleged is stolen, assuming those items are not of uniform value. Similarly, *Riggs v. State*, 561 S.W.2d 196 (Tex.Cr.App.1978), also cited by appellant, states that " 'when the only testimony as to total value states an amount including the value of items not alleged to have been stolen, there is in effect no evidence whatsoever that the value of the items so alleged was over the amount necessary to support the conviction.' " 561 S.W.2d at 197.

In the instant case, the indictment charges appellant with theft of a compressor and a generator, having an aggregate value of $200 or more, but less than $10,000. McWhorter testified that he was familiar with the value of the compressor and generator. He stated that replacement cost was $500 for the compressor and $770 for the generator. He also said that their combined value, used, was $400.

■ The State proved the aggregate fair market value of the property alleged to be stolen. See V.T.C.A., Penal Code Sec. 31.08(a)(1). The State also proved that both items alleged in the indictment were in fact stolen. When the State alleges an

aggregate value, proof that every item alleged was stolen *and* proof either of the individual value of *each* item or of the aggregate value of all items is sufficient to support the verdict. *Brown v. State,* 640 S.W.2d 275 (Tex.Cr.App.1982); *Wiley v. State,* 632 S.W.2d 746 (Tex.Cr.App.1982); *Anaya v. State,* 507 S.W.2d 561 (Tex.Cr. App.1974); *Price v. State,* 493 S.W.2d 528 (Tex.Cr.App.1973). The ground of error is overruled.

The judgment is affirmed.

CLINTON, J., dissents to the first ground of error.