**Opinion filed September 30, 2019**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-17-00240-CR & 11-17-00241-CR
_____

## CHARLES EDWARD JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR23612 & CR23614**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Charles Edward Johnson, of money laundering and possession of marihuana. *See* TEX. PENAL CODE ANN. § 34.02(a)(1) (West 2016); TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(4) (West 2017). The trial court sentenced Appellant to confinement for two years for the money-laundering conviction and twenty years for the possession-of-marihuana conviction.

In his brief, Appellant raises six issues: four concerning his pretrial motions to suppress and two challenging the sufficiency of the evidence underlying his convictions. In his first issue, Appellant contends that the search warrant affidavit failed to articulate sufficient facts to support a finding of probable cause by the issuing magistrate. Second, Appellant argues that the search of his mother's vehicle was outside the scope of the search warrant. Third, Appellant asserts that the trial court erred in admitting evidence ascertained through a search of his cell phone. In his fourth and final suppression issue, Appellant claims that his inculpatory statements to law enforcement were involuntary and, therefore, inadmissible. Lastly, in both his fifth and sixth issues, Appellant challenges the sufficiency of the evidence to support his possession of marihuana and money-laundering convictions, respectively. We affirm.

*Background Facts*

In August of 2014, Detective Joe Aaron Taylor of the Brownwood Police Department began receiving information regarding a marihuana trafficking operation based in Brown County. After speaking with multiple confidential informants, Detective Taylor's investigation homed in on an unknown male who went by the street names "Too High" and "Black." According to Detective Taylor's informants, the unknown male drove a small white car and was distributing large amounts of marihuana out of the Oakwood Apartment complex. Hampered by limited information, the investigation was slow moving until November of 2014 when Detective Taylor met with a woman named Jaclyn Davison.

Davison had been in a dating relationship with Appellant for about two years and was the mother of his child. Davison told Detective Taylor that Appellant was distributing large quantities of marihuana, which he stored at the Oakwood Apartments. Moreover, Davison confirmed that Appellant went by the nicknames

"Too High" and "Black" and drove a small white car. In addition to corroborating the information provided by the confidential informants, Davison also told Detective Taylor that, within the last forty-eight hours, she had seen Appellant in possession of four pounds of marihuana at their residence located at 306 North Greenleaf Street in Brownwood.

Based on the information provided by Davison and its similarities with the information provided by the confidential informants, Detective Taylor applied for and was granted a search warrant. The search warrant authorized law enforcement to search Appellant's home, Appellant's cell phone, and two white vehicles (a Chevrolet Aveo, license plate BT5X203 and a Cadillac station wagon, license plate DLW5234) for marihuana and evidence of marihuana distribution.

Officers executed the search warrant the following day, November 22, 2014, as Appellant was walking toward the street outside his home. Appellant's white Chevrolet Aveo was running with the keys in the ignition when officers arrived. The Cadillac, however, was not at the residence, and Appellant denied any knowledge of the vehicle. Nevertheless, a key to the Cadillac was found on the keychain in Appellant's Aveo.

Once inside the home, officers found two combination safes in the kitchen, which Appellant voluntarily opened. The two safes were empty but smelled strongly of raw marihuana. A third, identical safe was discovered in Appellant's mother's bedroom closet. Appellant disavowed ownership of the third safe, and officers were forced to open the safe manually. A search of its contents revealed rubber bands; dryer sheets; a spare key to the Cadillac; ammunition; and $9,000 wrapped in dryer sheets, rubber-banded, and vacuum-sealed.

Shortly after searching Appellant's home, officers located the white Cadillac across town at 1008 North Lackey Street in Brownwood and gained access to it

utilizing the keys found in Appellant's Aveo. A search of the Cadillac revealed over twelve pounds of vacuum-sealed bags of marihuana, a Taurus 9mm handgun, ammunition, a holster, and a digital scale. The vacuum-sealed bags were the same type as those found in Appellant's home; the handgun was loaded with the same ammunition observed in the third safe; and the digital scale was consistent with the empty digital scale box in Appellant's home.

In the weeks after he was arrested, Appellant made several efforts to speak with law enforcement to document an allegation of an improper relationship between a law enforcement officer and Davison. While outlining his accusation to law enforcement—and after being read his *Miranda*[1] warnings—Appellant admitted to purchasing thirty pounds of marihuana in Austin and selling the amount not found in the trunk of the Cadillac. Appellant further acknowledged that at least "some" of the $9,000 found in the third safe were proceeds from drug sales.

Prior to trial, Appellant filed a motion to suppress the evidence found in his home and cell phone and the statements he made to law enforcement after his arrest. In the motion, Appellant argued that there was insufficient probable cause to issue the search warrant, that the search of the Cadillac was outside the warrant's scope, and that Appellant's inculpatory statements to law enforcement were involuntary. The trial court denied the motion. At trial, the jury found Appellant guilty of both money laundering and possession of marihuana. This appeal followed.

*Search Warrant Affidavit*

In his first and third issues, Appellant contends that the search warrant affidavit failed to articulate sufficient facts to support a finding of probable cause. The State argues that the information in the affidavit, which was derived from statements by two separate confidential informants and corroborated by the personal

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

observation of a named witness, was sufficient to support a probable cause finding. As explained below, we agree with the State that Detective Taylor's affidavit outlined facts that provided a substantial basis for the magistrate to conclude that the search warrant would uncover evidence of criminal wrongdoing in the specified locations.

It is well established that "[t]he core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017) (quoting *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012)). Probable cause exists when, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

When we review the legitimacy of a magistrate's probable cause finding, we are "bound by the four corners of the affidavit." *Elrod*, 538 S.W.3d at 556.

> Probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place. A magistrate, in assessing probable cause, may draw inferences from the facts. Therefore, although the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts.
>
> A magistrate's decision to issue a search warrant is subject to a deferential standard of review, even in close cases . . . .
>
> . . . .

We will therefore uphold a magistrate's decision to issue a search warrant so long as he or she has a substantial basis for concluding that probable cause exists.

*Id.* at 556–57 (footnotes, alterations, and quotation marks omitted).

To determine whether a substantial basis existed for the magistrate's decision, we are instructed to avoid analyzing the affidavit in a "hypertechnical" manner. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *McLain*, 337 S.W.3d at 271. Instead, "when an appellate court reviews an issuing magistrate's determination, that court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McLain,* 337 S.W.3d at 271 (quoting *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)).

The affidavit in the present case is based almost entirely on statements provided by various informants. Importantly, we note that not all informants are equal. *See Duarte*, 389 S.W.3d at 356–58. While named citizen-informants are presumed reliable, *confidential* informants are not. *Id.* at 357.

Nevertheless, the mere fact that information was supplied by a confidential informant does not foreclose a finding of probable cause: "An affidavit may be based on hearsay information so long as the magistrate is informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable." *Brown v. State*, 243 S.W.3d 141, 145 (Tex. App.—Eastland 2007, pet. ref'd) (citing *Aguilar v. State*, 378 U.S. 108, 114 (1964)); *see Gates*, 462 U.S. at 241–42. Despite originating from a confidential source, courts have determined that information is reliable when it "is corroborated, is a statement against penal interest, is consistent with information provided by other informants, is a detailed first-hand

6

observation, or is coupled with an accurate prediction of the subject's future behavior." *Duarte*, 389 S.W.3d at 356–57 (footnotes omitted).

The information provided by the confidential informants, then, must be bolstered in some way before it is deemed reliable. However, information provided by Davison, as a citizen-informant, is inherently reliable. *See West v. State,* 720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names."). Regardless, there was a substantial basis for finding probable cause even if the reliability of all information within the affidavit is evaluated as if it were provided by a confidential informant. Accordingly, we do not need to determine whether Davison was a citizen-informant.

Looking to the four corners of the affidavit, we note that the various named and unnamed informants closely corroborate each other's stories. As Detective Taylor notes in his affidavit, a confidential source told him that Appellant was "consistently distributing between 20-30 pounds" of marihuana a month. A second confidential informant made the same statement to an investigator of the Brown County Sheriff's Office. Both confidential informants additionally stated that Appellant resided at 306 North Greenleaf Street and drove a Cadillac. Further, when Detective Taylor spoke with Davison, she corroborated the information from the confidential informants and further elaborated from her own first-hand observations. According to Davison, Appellant had been in possession of approximately four pounds of marihuana at the 306 North Greenleaf Street residence within the past forty-eight hours. She further told Detective Taylor that she observed Appellant "distribute marihuana in close proximity to the suspected place(s)." Based

on the totality of the circumstances, the combined logical force of these statements provided the magistrate with a substantial basis to find probable cause to authorize the search of Appellant's home. We overrule Appellant's first issue.

In Appellant's third issue, he focuses specifically on the magistrate's finding that there was probable cause to search Appellant's cell phone. Appellant complains that the search warrant affidavit neither conformed with the statutory requirements to search a person's cellular phone nor articulated sufficient facts to support a finding of probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 18.0215 (West Supp. 2018). As the State correctly points out, the present search warrant was issued on November 21, 2014. By contrast, Article 18.0215 of the Texas Code of Criminal Procedure was not enacted until the 84th legislative session in 2015 and did not go into effect until September 1, 2015. Act of May 31, 2015, 84th Leg., R.S., ch. 1251 § 2, art. 18.0215, 2015 Tex. Gen. Laws 4209, 4209–10 (amended 2017) (current version at CRIM. PROC. art. 18.0215). Consequently, Appellant's argument that the affidavit failed to satisfy the statutory requirements of Article 18.0215 is inapplicable in this case. *Walker v. State*, 494 S.W.3d 905, 908 n.1 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Instead, the totality-of-the-circumstances framework described above applies to whether the magistrate properly authorized the search of Appellant's cell phone.

This requires us to determine whether "a reasonable reading by the magistrate" would lead to the conclusion that there was a "fair probability" that Appellant's cell phone contained contraband or evidence of a crime. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). In reviewing the magistrate's decision, "the focus is on the combined logical force" of the facts in the affidavit. *Duarte*, 389 S.W.3d at 354–55. As set out in our analysis of Appellant's first issue, the statements in the search warrant affidavit would clearly allow a

magistrate to conclude that Appellant was distributing considerable quantities of marihuana. Based on that reasonable inference, the magistrate issued a search warrant for the seizure of "ledgers containing illegal drug transactions," including those recorded in telephones.

Again, interpreting the affidavit in a commonsensical and realistic manner and recognizing that the magistrate may draw reasonable inferences, we conclude that the magistrate could have reasonably inferred that someone distributing large quantities of marihuana would possess records of his dealings. *See McLain*, 337 S.W.3d at 271. We further conclude that, in an increasingly technology-dependent society, the magistrate could reasonably infer that those records would be on Appellant's cell phone. *See Rodriguez*, 232 S.W.3d at 62. Given the express statements in the affidavit and the reasonable inferences from them, we conclude that the magistrate had a substantial basis for concluding that probable cause existed sufficient to grant a search warrant for ledgers containing illegal drug transactions on Appellant's cell phone. We overrule Appellant's third issue.

*Scope of the Search Warrant*

In his second issue, Appellant argues that the search of his mother's Cadillac was outside the scope of the search warrant. Appellant's contentions appear to focus on the fact that the Cadillac was found and searched at 1008 North Lackey Street, not at 306 North Greenleaf Street. Appellant, however, also devotes a considerable portion of his brief to whether sufficient probable cause existed to authorize the search of the Cadillac. Accordingly, we briefly resume our discussion of the magistrate's probable cause finding before moving on to the scope.

According to Detective Taylor's confidential informants, Appellant "regularly use[d] a Cadillac to pick up large quantities of marihuana for distribution in Brownwood (Brown County), Texas." Confidential informants told another

officer that Appellant "often use[d] a Cadillac (that he ke[pt] covered at the residence) to pick up large quantities of marihuana for distribution." Though these statements themselves were not corroborated by Davison, as previously discussed, we review probable cause findings in light of the totality of the circumstances. *McLain*, 337 S.W.3d at 272. Deviating from that standard would violate our duty to refrain from reading the affidavit in a hypertechnical manner. *See Gates*, 462 U.S. at 236; *see also McLain*, 337 S.W.3d at 272. When we consider the corroborating statements above, it was reasonable for a magistrate to find that the statements of the confidential informants were reliable. We conclude, therefore, that the details in the affidavit provided the magistrate with sufficient probable cause to conclude that there was a fair probability that contraband or evidence of a crime would be found in the described Cadillac.

Next, we move our attention to Appellant's complaints about the scope of the search warrant. "Before the facts can be examined to determine whether a search exceeded the scope of the warrant we must determine whether the scope of the search is contested because of the *location* where the items were seized, or by the claims that the items seized were not described in the warrant or otherwise reasonably connected to the search." *Snider v. State*, 681 S.W.2d 60, 62 (Tex. Crim. App. 1984). As in this case, "[i]f the former contention is raised the officers must show that they were properly in the place where the item was found." *Id.* at 62–63. The officers in this case were operating under the authority of a warrant, which is sufficient to justify the location of the seizure. *See id.* at 63 (stating officers may establish the validity of the location a seizure took place "on the basis of [a] warrant . . . or under the authority of one of the other exceptions to the warrant requirement"). Appellant's contentions, however, are not concerned with where the Cadillac *was* so much as where the Cadillac *was not*.

Appellant relies on *United States v. Gentry* to support the proposition that a vehicle located away from the premises to be searched is outside the scope of the search warrant. In *Gentry*, however, the search warrant merely authorized the search of vehicles located on the "surrounding grounds." *United States v. Gentry*, 839 F.2d 1065, 1068–69 (5th Cir. 2000). The search warrant in this case, however, explicitly provides for the search of "a white Cadillac station wagon displaying Texas license plate # DLW5234." Accordingly, the magistrate authorized the search of Appellant's home and the Cadillac itself, irrespective of its location within the City of Brownwood. As the court of criminal appeals stated in *State v. Barnett*: "The appellee's car is constitutionally protected, not because it is in or out of any 'search zone,' but because the search warrant affidavit does not particularly describe it or state any reasons for its search." *State v. Barnett*, 788 S.W.2d 572, 577 (Tex. Crim. App. 1990). Because the search warrant affidavit in this case both particularly described the Cadillac and set forth the reasons for its search, the search of the Cadillac was well within the scope of the search warrant. We overrule Appellant's second issue.

*Voluntariness*

In Appellant's fourth issue, he claims his inculpatory statements to law enforcement were involuntary. Accordingly, he claims that the trial court erred when it denied his motion to suppress evidence resulting from those statements. Appellant's argument rests on an assertion that his statements were involuntary because the interviewing officer refused to investigate his complaint of police misconduct unless he confessed to the present offenses. Because we agree with the trial court that Appellant's statements were not coerced and were instead given freely and voluntarily and without compulsion, we conclude that the trial court did not err in denying the motion to suppress.

Shortly after being arrested, Appellant requested to speak with Texas Ranger Jason Shea. That entire meeting lasted less than one hour. Throughout the meeting, Appellant did not request his attorney even after he was read the statutory warning set out in Article 38.22, section 2(a) of the Texas Code of Criminal Procedure. The purpose of Appellant's requested meeting was to report an allegation of police misconduct concerning his case.

During their discussion, Ranger Shea made several statements offering to investigate Appellant's complaint. Notably, one such statement came even before Appellant made any inculpatory statements. Given the overlap between Appellant's complaint and pending charges, however, Ranger Shea also made several efforts to ensure the veracity of Appellant's complaint. Though most of Ranger Shea's statements are wholly innocuous, in one instance he told Appellant, "If you're not going to be totally honest with me, I'm not going to help you at all."

The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) (footnotes omitted). "[G]reat deference is accorded to the trial court's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown." *Id.* We look to the totality of the circumstances when we review the voluntariness of a statement. *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991).

Pursuant to Article 38.21 of the Texas Code of Criminal Procedure, statements of the accused are admissible against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion." CRIM. PROC. art. 38.21 (West 2005); *Martinez v. State,* 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). Standing

alone, a detective's misrepresentations to a "suspect during an interrogation" do not render a confession involuntary. *Green v. State,* 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). Law enforcement may employ certain types of deception "designed to elicit a confession" so long as the suspect's will is not overborne. *Id.* Factors to consider when determining whether a defendant's will was overborne include: "length of detention; incommunicado or prolonged interrogation; denying access to a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality." *Pace v. State,* 986 S.W.2d 740, 747 (Tex. App.—El Paso 1999, pet. ref'd).

None of these factors are at issue in this case. Ranger Shea's statements were not of such an influential nature that they would cause a "defendant to speak untruthfully." *Martinez,* 127 S.W.3d at 794. This is especially true considering (1) the isolated nature of the statements, (2) Ranger Shea's continued willingness to help investigate Appellant's complaint, and (3) Appellant's cooperation with federal authorities to work out a deal with them, indicating his willingness to confess to law enforcement. Because the record does not support that Appellant's statements were coerced, we overrule his fourth issue.

*Evidentiary Sufficiency*

Lastly, in Appellant's fifth and sixth issues, Appellant challenges the sufficiency of the evidence to support the convictions for possession of marihuana and money laundering. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337, S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the

offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inference raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In Issue Five, regarding the possession-of-marihuana conviction, Appellant asserts that the State failed to prove that he was linked to the marihuana found in his mother's car. A person commits the offense of possession of marihuana if he "knowingly or intentionally possesses a usable quantity of marihuana." HEALTH & SAFETY § 481.121(a). Evidence which affirmatively links the accused to the marihuana "suffices for proof that he possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Links that may establish knowing possession include: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of drugs when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found

14

with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

In Issue Six, Appellant argues that the State failed to prove that the money found in the third safe was acquired or derived from any criminal activity or that he was linked to that money if it was acquired or derived from such activity. A person commits the offense of money laundering if he "acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity." PENAL § 34.02(a)(1). Knowledge of the specific nature of the criminal activity giving rise to the proceeds is not required to establish a culpable mental state. *Id.* § 34.02(a–1). The money laundering indictment alleged that Appellant did "knowingly acquire or maintain an interest in or possess the proceeds of criminal activity, to-wit: possession or delivery of marihuana or controlled substance and the value of said funds was $1,500 or more but less than $20,000." Accordingly, we will jointly discuss the evidence supporting each conviction.

The evidence presented against Appellant at trial was extensive. The evidence included witness testimony, officer testimony, more than twenty incriminating text messages, and Appellant's own confession. The witness and officer testimony established that Appellant was in possession of a key to the Cadillac, that the trunk of the Cadillac contained marihuana, and that Appellant was distributing marihuana on the streets. The testimony further established that conspicuously wrapped money and other contraband were found in Appellant's home. The text messages further support the inference that Appellant was distributing marihuana.

Appellant's confession—though not the *sine qua non* of his conviction—was certainly one of the strongest pieces of evidence presented against him. On the recording, which was played at trial, Appellant admits to purchasing thirty pounds

of marihuana in Austin and selling sixteen pounds prior to the officers' discovery of the remaining fourteen. Appellant further admitted that at least some of the $9,000 found in the third safe was money from criminal activity. Standing alone, a reasonable jury could have found Appellant guilty beyond a reasonable doubt of both possession of marihuana and money laundering based solely on his confession. Thus, we believe that the jury could have found beyond a reasonable doubt that Appellant knowingly or intentionally possessed a usable quantity of marihuana and knowingly acquired or maintained an interest in the proceeds of criminal activity. We overrule Appellant's fifth and sixth issues.

## This Court's Ruling

We affirm the judgments of the trial court.

KEITH STRETCHER
JUSTICE

September 30, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.